UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KEVIN MORSE,

      Plaintiff,

  v.

FIFTY WEST BREWING
COMPANY LLC, et al.,

      Defendants.

Case No. 1:21-cv-377

JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

This case started with a single Plaintiff—Kevin Morse—suing his former employer, Defendant Fifty West Brewing Company LLC and its co-owners Defendants Robert Slattery, Jr., and Robert Slattery, Sr. (collectively Defendants). But the Court conditionally certified this case as a collective action under the Fair Labor Standard Act (FLSA), (Doc. 29), and additional Plaintiffs then opted in. (*See* Docs. 16, 30, 32, 34). Some of those new Plaintiffs, though, have chosen no longer to engage with their attorneys or this litigation, causing Defendants discovery delays and wasted efforts. Accordingly, for the reasons explained more fully below, the Court **GRANTS** Defendants' Motion to Dismiss for Failure to Prosecute (Doc. 52)[1] and **DISMISSES** fourteen of the opt-in Plaintiffs from this action.[2]

---

[1] Since Defendants' motion is directed at dismissing only fourteen of the forty-six opt-in Plaintiffs, it is better characterized as a partial motion to dismiss.

[2] The dismissed Plaintiffs are: Douglas Brandt, Marion Caine, Kayla Daniels-Houseman, Katherine Ferris, Evelyn Hicks, Andrew Huffmann, Trinity Lana, Anna Mayevery, Unique Overly, Courtney Reeder, Frances Rosenkrantz, Emily Turner, Wyatt Michael Wachs, and Jack Wyche. (Doc. 52, #410; *see also* Docs. 16, 30, 33).

## BACKGROUND

On June 4, 2021, Morse initiated this action. (Compl., Doc. 1). He alleges that, in the course of operating their restaurant locations, Defendants mishandled employees' tips at the onset of the Covid-19 pandemic, in violation of the FLSA, Ohio's Prompt Pay Act, and other state laws. (*See id.* at #6–8, 10–14). Morse brought suit as both a collective action and putative class action on behalf of himself and other Fifty West employees similarly injured through these allegedly wrongful compensation policies. (*Id.* at #1–2, 8–10).

Almost a year into the case, the Court conditionally certified a collective action under the FLSA, 29 U.S.C. § 201, et seq., on the parties' joint stipulation. (Doc. 29). Prior to that conditional certification, fourteen other Fifty West employees (or past employees) had filed consent forms to join the case. (*See* Doc. 16); s*ee also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to [an FLSA collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). After conditional certification, thirty-two more Plaintiffs filed consent forms. (*See* Docs. 30, 33, 34). In total, forty-six opt-in Plaintiffs now "enjoy party status as if they had initiated the action." *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 394 (6th Cir. 2021).

Morse also moved for class certification on his Ohio law claims. (Doc. 40). But the Court denied that motion because he had "jumped the gun and moved for certification without a sufficient evidentiary record to back up his assertions." (Doc.

47, #396). The meager evidentiary record at the time did not "allow for a meaningful Rule 23 analysis." (*Id.*).

Since then, the parties have engaged in discovery to build up that record. But the evidentiary record remains incomplete in one significant respect—to date, fourteen of the forty-six opt-in Plaintiffs have not responded to Defendants' written discovery requests, which Defendants served on all of them long ago on July 15, 2024. (Doc. 52, #411, 414–15; Doc. 52-1, #420). While that is nearly one-third of the Plaintiffs who have declined to respond, it still represents something of an improvement. The Court held a telephonic discovery conference on January 16, 2025, to discuss several ongoing discovery disputes between the parties. (1/16/25 Min. Entry). The conference covered various topics, but centered primarily on the lack of responses from *twenty-six* of the opt-in Plaintiffs at that time. (*See id.*). During the call, Plaintiffs' counsel indicated that they were having difficulty contacting many of those individuals. In response, and given the six months that had elapsed since Defendants served their discovery requests, along with the lack of communication between the twenty-six opt-in Plaintiffs and their attorneys, the Court (1) stressed that each of these individuals is a party to the case, with the same attendant responsibilities required of any party in any litigation, and (2) expressed its concerns about those individuals' failure to prosecute. Ultimately, the Court directed Plaintiffs' counsel to provide discovery for those twenty-six Plaintiffs by January 31, 2025. (*Id.*). The Court further warned Plaintiffs' counsel that the Court would be inclined to dismiss any unresponsive Plaintiffs after that time, if Defendants so moved.

3

Apparently, twelve of those Plaintiffs have since responded. (*See* Doc. 52, #414; Doc. 52-1, #422). But that still leaves fourteen who have not, over ten months after discovery requests were served. So Defendants now move to dismiss those Plaintiffs for failure to prosecute. (Doc. 52). Plaintiffs responded, (Doc. 54), and Defendants replied in turn, (Doc. 55). Discovery recently closed and the parties' dispositive motions deadline fast approaches. (2/27/25 Not. Order). The motion is ripe for the Court's review.

## LEGAL STANDARD

Federal Rule of Civil Procedure 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." When deciding whether to dismiss for failure to prosecute, courts weigh four factors: (1) the party's "willfulness, bad faith, or fault"; (2) prejudice to opposing parties; (3) "whether the dismissed party was warned that failure to cooperate could lead to dismissal"; and (4) "whether less drastic sanctions were imposed or considered before dismissal was ordered." *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999). "Although typically none of the factors is outcome dispositive, … a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Id.* While dismissal for want of prosecution is a harsh sanction, *see Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013), district courts have substantial discretion to use this tool to manage their dockets and to avoid "unnecessary burdens on the tax-supported courts and opposing parties," *Knoll*, 176 F.3d at 363 (cleaned up).

4

## LAW AND ANALYSIS

Each of the four *Knoll* factors weighs in favor of dismissing the fourteen unresponsive Plaintiffs. These Plaintiffs have shirked discovery responsibilities, stymied Defendants, and ignored Court warnings. Additionally, no alternative sanction would cure their lack of engagement.

### A.     Willfulness, Bad Faith, or Fault

The first *Knoll* factor counsels courts to dismiss cases when "the record clearly evinces a party's delay or contumacious conduct." *Saulsberry v. Holloway*, 622 F. App'x 542, 545 (6th Cir. 2015) (quotation omitted). Contumacious conduct includes failing to participate in discovery. *Id.*; *see also Carpenter*, 723 F.3d at 705; *Eslinger v. Beasy Trans Sys., Inc.*, No. 2:21-cv-1606, 2021 WL 5794320, at *2 (S.D. Ohio Dec. 7, 2021) ("Plaintiff's failure to comply with discovery or to explain to the Court why he has not complied indicates that he has a reckless disregard for the effect of his conduct on the Court's proceedings, and thus acted with willfulness, bad faith, or fault." (cleaned up)), *report and recommendation adopted*, No. 2:21-cv-1606, 2022 WL 19243 (S.D. Ohio Jan. 3, 2022). It also includes "failure to timely comply with [a] clear order of the Court, which establishe[s] a reasonable deadline for compliance." *Williams v. Daughtery*, No. 2:22-cv-3820, 2022 WL 17817693, at *2 (S.D. Ohio Dec. 20, 2022).

Here, the fourteen opt-in Plaintiffs at issue appear to have unilaterally opted out of participating in discovery. They also ignored the Court's order to comply with the discovery requests by January 31, 2025, which the Court considered a reasonable deadline given the already lengthy delay in responding to the requests at the time.

5

(*See* 1/16/25 Min. Entry). In short, these Plaintiffs' conduct is contumacious, and this factor weighs heavily in favor of dismissing them from this action.

Plaintiffs try to distract from the crux of this issue by arguing that Defendants July 2024 requests are "eleventh-hour discovery requests … [served] with the hope that, several years on, some of the opt-in plaintiffs would be unreachable or simply not respond." (Doc. 54, #447).[3] But even if, as Plaintiffs contend, the discovery requests were issued late in the game, the fourteen unresponsive Plaintiffs do not get to simply sit out because the game has lasted longer than they anticipated. A party's obligation to participate in an ongoing lawsuit does not carry an expiration date.

Further, Plaintiffs suggest that since thirty-two of the forty-six opt-in Plaintiffs responded to the request, the unresponsiveness of the remaining fourteen should be excused. (*Id.* at #452–53 (citing *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2020 WL 1129325 (S.D. Ohio Mar. 6, 2020)). Put differently, the Plaintiffs ask the Court to permit post-hoc representative sampling.[4] (*Id.* at #452). But that's generally not how collective actions work. *See Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1009 (6th Cir. 2023) (explaining that "unlike a Rule 23 class action, an FLSA collective action is not representative"). And even when courts have allowed

---

[3] Shortly before Defendants made the discovery requests, the Court extended the discovery deadline on a joint motion from August 13, 2024, to October 18, 2024. (*See* 4/12/24 Not. Order; 7/11/24 Not. Order). The actual discovery deadline, which has now passed, ended up being May 2, 2025, after the Court granted a few more extensions. (*See* 2/27/25 Not. Order).

[4] That is, Plaintiffs are making an after-the-fact justification for the noncompliance of some of the opt-ins. If the Court had allowed representative sampling (which Plaintiffs should have requested before submitting responses), the Court certainly wouldn't have chosen from a sample of solely responsive opt-ins, *after* responses had been submitted (i.e., allowing Plaintiffs to simply exclude non-responsive opt-ins from the sample).

6

representative discovery in collective-action contexts, the number of plaintiffs in those cases has far exceeded forty-six. *See, e.g.*, *Twohill v. First Acceptance Corp.*, No. 3:17-cv-284, 2018 WL 11437817, at *2 (M.D. Tenn. Oct. 5, 2018) (explaining that "courts are more inclined to order a representative sampling as the number of Opt-In Plaintiff[s] nears 200 or above" and allowing written discovery of 136 opt-in plaintiffs); *Kopp v. Precision Broadband Installations, Inc.*, No. 3:20-cv-2779, 2022 WL 17405147, at *3 (N.D. Ohio Dec. 2, 2022) (collecting cases). Take *Hatmaker*, which Plaintiffs cite in support of their position, as an example. There, defendants sought to "propound discovery on approximately 800 opt-in [collective] members and to depose 166 of them." 2020 WL 1129325, at *1. That's a far cry from the forty-six opt-in Plaintiffs here. So the Court is unconvinced that representative sampling is appropriate here. And even if it were, Plaintiffs do not get to just unilaterally impose their preferred "sample" on the Defendants.

The rest of Plaintiffs' argument seems to center around the fact that the fourteen unresponsive Plaintiffs have not acted in bad faith. (*See* Doc. 54, #451–53). Essentially, Plaintiffs argue that just because some of them are unreachable does not mean they have dilatory intent. (*See id.*). But even if they lack dilatory intent, that does not preclude a finding of bad faith. Indeed, "an abandonment of communication between a party and his attorney … *illustrates* bad faith, willfulness, or fault." *Hanna v. Marriott Hotel Servs., Inc.*, No. 3:18-cv-325, 2021 WL 6205790, at *3 (M.D. Tenn. Dec. 31, 2021) (emphasis added). And even if "there is no indication that the [fourteen] opt-in Plaintiffs' failure to respond to the Defendants' discovery request

7

was driven by 'bad faith' in its most nefarious sense, these [fourteen] are still at fault for failing to comply with the Court's Order." *Id.* (cleaned up); *see also Kovacic v. Tyco Valves & Controls, LP*, 433 F. App'x 376, 380–81 (6th Cir. 2011) ("A plaintiff that does not act in bad faith, but 'nevertheless shows willfulness and fault in that he was at best extremely dilatory in not pursuing his claim,' indicates an intention to allow his case to lapse."). As a result, the fourteen opt-in Plaintiffs' unresponsiveness is clearly contumacious for *Knoll* purposes. So the first factor supports Defendants' motion to dismiss.

**B.     Prejudice**

The second factor also supports Defendants' position. "A defendant is prejudiced by a plaintiff's dilatory conduct if the defendant is 'required to waste time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide.'" *Carpenter*, 723 F.3d at 707 (alteration in original) (quoting *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997)); *see also Hanna*, 2021 WL 6205790, at *3 (explaining how six opt-in plaintiffs' "failure to actively participate in discovery" prejudiced defendants). Defendants aver that they are "prejudiced by having to chase the [unr]esponsive Plaintiffs for their discovery responses and would be prejudiced if the [unr]esponsive Plaintiffs were permitted to remain as parties to this case despite failing to respond to requests for highly relevant information." (Doc. 55, #471). Since "Defendant[s] ha[ve] endured the cost of litigation and borne the cost of filing motions and taking other actions in pursuit of discovery cooperation which

8

Plaintiff[s are] obligated to provide … Plaintiff[s'] lack of compliance has prejudiced the Defendant[s]." *Eslinger*, 2021 WL 5794320, at *2.

Plaintiffs assert that this factor supports their position because Defendants have not specifically identified "how the lack of responses has prejudiced them in any way." (Doc. 54, #453). But the Court does not require specificity in terms of exact dollar amounts or hours expended. Further, while Plaintiffs question the relative importance of, and alternative avenues for Defendants to attain, the information Defendants seek from the fourteen unresponsive Plaintiffs, the Court already expressed its belief that the information is relevant and discoverable during the January 16, 2025, discovery conference. Further, the responses from the other thirty-two Plaintiffs undercuts Plaintiffs' argument. Accordingly, the second factor weighs in Defendants' favor.

## C. Prior Warnings

"When a party receives a targeted warning that its failure to prosecute will lead to dismissal, but nonetheless persists in its noncompliance, this factor favors … dismissal." *Saulsberry*, 622 F. App'x at 547. Plaintiffs do not contest that the Court warned them about the possibility of dismissal for want of prosecution. (Doc. 54, #451). And "[b]ecause counsel was on notice that the [C]ourt was contemplating sanctions and nevertheless" did not procure the necessary responses, they have not sufficiently heeded the Court's warning. *Kovacic*, 433 F. App'x at 382. The third factor therefore supports dismissing the fourteen unresponsive Plaintiffs from this action.

9

**D.     Alternatives**

Finally, while courts should not dismiss for failure to prosecute without *considering* other sanctions, the Court need not *actually impose* other sanctions beforehand and can still resort to dismissal as an initial sanction as appropriate. *See Harmon,* 110 F.3d at 368. When the issues under consideration stem from an attorney's conduct, rather than a party's, other sanctions usually provide a more appropriate starting point. *See Carpenter*, 723 F.3d at 709. But here the Court is faced with the conduct of parties to this litigation.

Defendants argue that since the fourteen Plaintiffs at issue "have made no effort to meaningfully participate in this case, any sanctions less drastic than dismissal would be futile." (Doc. 52, #417 (citing *Eslinger*, 2021 WL 5794320, at *2)). The Court agrees. When "any other sanction imposed by the Court would not impact Plaintiff[s'] conduct, and alternate sanctions would only further burden the Court and Defendant[s'] time and resources," dismissal is proper. *Holmes v. United States*, No. 1:20-cv-825, 2024 WL 3287127, at *4 (S.D. Ohio July 3, 2024). Such is the case here. The Court held a discovery conference and allowed counsel to explain the reasons for the then-twenty-six opt-in Plaintiffs' unresponsiveness. *See Kovacic*, 433 F. App'x at 383. The Court then afforded those Plaintiffs approximately two-weeks to re-engage in this litigation. *See id.* Some of them—twelve to be exact—elected to do so. (Doc. 52-1, #422). The other fourteen did not. (*Id.*). Based on those facts, Plaintiffs wisely concede that this factor does not help their position. (Doc. 54, #451). So the final factor supports granting Defendants' motion.

10

\* \* \*

All four *Knoll* factors support Defendants' request that the Court dismiss the fourteen unresponsive opt-in Plaintiffs in this case. Accordingly, the only remaining question is whether the Court should dismiss those Plaintiffs with or without prejudice. While the sanction is a harsh one, the Court goes with the former option.

"The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629 (1962). Still "'[d]ismissal with prejudice is a harsh remedy not to be employed' indiscriminately." *Craddock v. FedEx Corp. Servs., Inc.*, 102 F.4th 832, 839 (6th Cir. 2024) (quoting *Consolidation Coal Co. v. Gooding*, 703 F.2d 230, 232 (6th Cir. 1983)). But sometimes circumstances call for it. And, "[w]hile dismissal without prejudice is a lesser sanction, when an individual's 'only noted participation in [the] litigation has been to file the FLSA opt-in form, no lesser sanction would be appropriate.'" *Hanna*, 2021 WL 6205790, at \*4 (alteration in original) (quoting *Williams v. Le Chaperon Rouge*, No. 1:07-cv-829, 2008 WL 2074039, at \*1 (N.D. Ohio May 14, 2008)). The "lesser sanction of dismissal without prejudice is not appropriate because [it] would allow the non-responsive Plaintiffs to simply 're-file in district court and start the process all over again, just as though nothing had ever gone wrong.'" *Thompson v. Direct Gen. Consumer Prods., Inc.*, No. 3:12-1093, 2015 WL 2366157, at \*2 (M.D. Tenn. May 18, 2015) (quoting *Bay Corrugated Container, Inc. v. Gould, Inc.*, 2015 WL 1529145, at \*5 (6th Cir. Apr. 7, 2015)). Accordingly, the Court dismisses the fourteen unresponsive opt-in Plaintiffs with prejudice to avoid such a result.

11

But that only goes so far. Recall that this is both a collective and a putative class action. The dismissal without prejudice extends only to the former claims and does not preclude them from participating in any recovery as absent class members, should the Court ultimately certify a class and the representative Plaintiffs prevail.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss for Failure to Prosecute (Doc. 52). Therefore, the Court **DISMISSES WITH PREJUDICE** the following Plaintiffs' FLSA collective-action claims: Douglas Brandt, Marion Caine, Kayla Daniels-Houseman, Katherine Ferris, Evelyn Hicks, Andrew Huffmann, Trinity Lana, Anna Mayevery, Unique Overly, Courtney Reeder, Frances Rosenkrantz, Emily Turner, Wyatt Michael Wachs, and Jack Wyche. The dismissal does not impact their ability to participate as absent class members if the Court certifies a class.

**SO ORDERED.**

May 14, 2025
 **DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**